LABADIE *v.* DETROIT, LIMA & NORTHERN RAILWAY CO.

ASSUMPSIT—CONTRACTS—PRIVITY—RAILROADS.

*Assumpsit* will not lie against a railroad company to recover damages for its failure to erect and maintain fences, ditches, gates, and crossings upon land occupied for its right of way, in accordance with the contract under which the land was conveyed, where the contract and deed were made between plaintiff and third persons, no privity between plaintiff and defendant being shown.

Error to Wayne; Waite, J.    Submitted October 10, 1900.    Decided December 31, 1900.

*Assumpsit* by Antoine Labadie against the Detroit, Lima & Northern Railway Company for breach of an agreement under which it acquired a portion of its right of way.    From a judgment for defendant on verdict directed by the court, plaintiff brings error.    Affirmed.

*Ari E. Woodruff* (*Galloway & Graham*, of counsel), for appellant.

*Walter B. Richie* and *Watts, Smith & Baldwin*, for appellee.

LONG, J. This action was commenced in justice's court, where judgment was rendered in favor of plaintiff for $300. Defendant appealed to the circuit court, and the case was there tried before a jury. The court directed a verdict in favor of defendant, and plaintiff brings error.

At the opening of the case in the circuit court, counsel for plaintiff made the following statement to the court and jury:

"In the month of August in the year 1897, the Detroit, Lima & Northern Railroad was extending its tracks into the city of Detroit, and they wanted to get across the property of Mr. Labadie. They sent an agent there by the name of Burke, and he entered into a contract, or sort of an option, for the right of way across Mr. Labadie's property, and in that contract, which will be offered in evidence, they agreed to do certain things. They agreed to erect fences; they agreed to put in a culvert to drain off the water; they agreed to put in a driveway, that he could cross the tracks; and also agreed to put in a gate, so that he could get to and fro across that track on his property. That was in the month of August, 1897; and in the month of September, on the 27th day of September, a month and two days later, they came over to Mr. Labadie, and Mr. Labadie executed a deed to this railroad company, or to a party for the railroad company, and with the same conditions in the deed that they were to perform. They went on there, and they built their road, and they never erected any fence. They never erected any culvert, but they went down when they started to build their road, and put a sort of drain, put down a couple of tile a foot in diameter upon the ground, and graded on top of these tile, and raised their road probably a foot to sixteen inches above the tile. Then they went along the line of Mr. Labadie, and they dug out a drain from two and a half to three feet in depth along the property of Mr. Labadie, and drew that dirt upon this road, so it left the roadbed—the top of the rail—between two and a half and three feet from the bottom of the ditch. Then they never put in any crossing for Mr. Labadie to go to and fro across his land. When Mr. Labadie wanted to draw a load of manure or bring in a load of hay or cornstalks, whatever it might be, he had to cross his neighbor's land, and go in that way, in order to get to his property. They didn't

put up any fence, and Mr. Labadie was compelled to keep his cattle and his horses and his hogs in some other place four or five months, and, of course, he had to feed them. Then this drain that they put in; every time there came a rain this ditch would fill with water, and the drain that they put in was put in such shape that part of the water would cross this drain, and would go back between six and eight inches over Mr. Labadie's property, and flood it, so it was impossible for him to use it.   He brought this suit some time a year after they had entered into this agreement, and it finds its way by appeal into this court.

"Now, we will endeavor to show you, gentlemen of the jury, that their agent entered into this agreement with Mr. Labadie, and it was entered into, and they paid Mr. Labadie for his property.   But they didn't carry out the conditions of the contract, nor the conditions of the deed, and Mr. Labadie has sustained whatever damages he will testify to here by the nonperformance of this contract. We will show, gentlemen of the jury, that, in order to get across his land, Mr. Labadie had to build his own driveway across there and furnish the timber; that, after the suit had been started against them, they undertook to stick a fence along in the ditch, and, after the fence had been put up there with some sort of a barb wire, it all fell down.   It is lying down there now.   The fence isn't up, and Mr. Labadie can't use his property for pasturage purposes.   If he turns his cattle in there, they go onto this track, and over onto the Michigan Central and the Lake Shore tracks; and consequently he is obliged to keep his cattle in another field.   They haven't even erected a gate. There is a place for a gate, but there isn't any gate, and he hasn't any access to this property in question.

"Now, that is the plaintiff's case.   If we show these facts to you, gentlemen of the jury, we shall ask a verdict at your hands, under the instructions of the court, for whatever damages you think Mr. Labadie has sustained."

It appears that in the justice's court the declaration was upon the common counts in *assumpsit*,—

"And specially [as it recites] upon an express contract bearing date August 25, 1897, assumed and accepted from thence hitherto by it, the said defendant, with him, said plaintiff, where and in the breach thereof by it, the said defendant, the said plaintiff hath been and is, to the time of the commencement of this suit, greatly damnified," etc.

To maintain the issue on his part, the plaintiff offered in evidence a certain contract, dated August 25, 1897, between himself and one Francis H. Burke, for the conveyance of a strip of land 40 feet wide and 457 feet long; this strip being described by metes and bounds. The consideration stated in the contract is $1,000. It is further recited in the contract that:

"The party of the second part agrees to pay the party of the first part all damages done to his crops; also the privilege to remove all trees on said strip of land; also that the fences of his pasture shall be kept so his cattle cannot get out; also to put a culvert satisfactory to the party of the first part; also to maintain a ditch on the east line of said road to said culvert mentioned; and also a twenty-foot crossing, with a gate sixteen feet wide, to be satisfactory to the party of the first part."

The contract also recites that:

"The party of the first part will within sixty days, at the written request of the second party, execute a good and sufficient warranty deed of the described premises to the party of the second part, or to any person whom the second party may designate."

The plaintiff also offered in evidence a deed made September 27, 1897, by himself and wife to James B. Townsend, of Lima, Ohio, of the same premises described in the Burke contract. This deed recites that it is agreed that the party of the second part is "to erect and maintain good, lawful fences, ditches, and one railroad crossing and culvert, and at least one sixteen-foot gate, satisfactory to and for the use of the parties of the first part," etc.

The plaintiff testified that, after this deed was given, a railroad company immediately began to build a railroad across this strip of land, and that it had been so used ever since. He further testified that no fence had ever been maintained, no gate was put in, and no culvert or sewer built, and no crossing erected; that whoever operated the railroad took the fences away, and did not put up others, so that his cattle ran over his farm, and destroyed his

crops.   Plaintiff called Mr. Burke, to whom the contract
for the land was given.   He testified that he was in the
employ of the defendant railway company on August 25,
1897, buying up the right of way for it to build its road;
that he took this contract for it; that the deed to Mr.
Townsend was prepared in his office, and that he took the
deed, and turned it over to the railway company; that
Mr. Townsend was one of the directors of the defendant
road, but he could not state whether it was delivered to
Mr. Townsend, but it was recorded in the office of the
register of deeds; that he got the money from Mr. Town-
send, the grantee in the deed, to pay Mr. Labadie for the
land.   There is some testimony tending to show that Mr.
Townsend was active in looking after the affairs of the
defendant company; but there is no testimony showing
that the defendant company ever had a deed of the prem-
ises from Townsend, or that it ever made any contract
with the plaintiff in reference to this land.   The only evi-
dence connecting the defendant company with the land is
that Townsend was one of the directors of it, and that it
ran its trains over the land.

At the close of the testimony, plaintiff asked to amend
his declaration by alleging:

"Plaintiff declared orally against the defendant upon
all the common counts in *assumpsit*, and specially upon
an express contract bearing date August 25, 1897 (and as
was stipulated in a certain deed from said plaintiff and
wife bearing date September 27, 1897, to James B. Town-
send for said defendant), assumed and accepted from
thence hitherto by it, the said defendant, with him, said
plaintiff, where and in the breach thereof by it, the said
defendant, the said plaintiff hath been and is, to the time
of the commencement of this suit, greatly damnified, in
all the sum of $300 or under."

The court, without passing upon the question of allow-
ing the amendment to be made, then charged the jury as
follows:

"Gentlemen of the jury:   I do not think the plaintiff
can recover in this action, for the reason that the pl ead

ings in the case—the form of action—do not accord or conform to the testimony as given in the case. I think the plaintiff is unable to recover, under the proof adduced here, in an action of *assumpsit*, or upon the declaration which he has filed; so I do not think he would be allowed to recover, even though the amendment was made which he proposes to make, and which has been suggested in this case. This is an action in *assumpsit*. There must be a privity between the parties. There must be either an express or implied assumption on the part of the defendant to pay money. All the damages here are unliquidated damages,—damages for the breach of a contract or agreement which he claims to exist,—and damages, of course, which must be assessed by the jury upon the evidence in the case. It is very doubtful whether, under this evidence, he could recover any damages on that theory of the case, for the reason that they are not sufficiently specific; but I prefer to place it upon the other ground, for what seems clear to me is that he cannot recover upon the form of action which he has brought. You will therefore bring in a verdict of no cause for action."

We think the court was not in error in this charge. The judgment must be affirmed.

The other Justices concurred.